Good morning, Your Honors. I'm Sherry Rusk on behalf of Mr. Starks. To the extent that the Court is interested in the appellate waiver issue? Yes. I have a question about it. Looking at page 8 of the plea agreement, which is in the supplemental excerpt of record, one of the provisions is that if the sentence is ever reduced at the defendant's request, the government shall have the right to do a number of things, including file new charges that would otherwise be barred, and to prosecute the defendant on the reinstate the counts that were dismissed. So I'm wondering what your view is of what benefit there is to your client if you were to succeed on your main argument, because he would then face prosecution on counts 2, 3, and 4, which were dismissed, and potentially other charges as well. Certainly, the government in the plea agreement does reserve the right to do that. That doesn't mean that the government will, in fact, do that. There are other options. Obviously, the sentence was part of a plea bargain, and the government, for many reasons, could choose not to do that. But at this point, what we're arguing on behalf of this Court is whether or not the district court made an error of law in thinking that it was bound by the guidelines after Booker. And the district judge unequivocally stated that he thought he was bound by the sentencing guidelines after Booker. That he That sort of doesn't answer my question, and I know it's kind of a mushy question. It isn't directly a question about waiver, but it does concern me that I wonder if there's some – it's not really a conflict of interest, but you're attempting to alter and reduce his sentence, but at the same time, he then becomes exposed, at least, to significantly greater punishment in toto. The potential is there for that, but for a number of reasons which I can get into with this Court, I don't think that that's very likely to happen. There are other arguments that we could make, both to the government and to the district court, that I think would render it very unlikely that Mr. Starks would get a higher sentence in this case. Some of it is off the record here, but there were co-defendants in Mr. Starks' case who were sentenced and who are already out of custody. They received time-served sentences. So multiple defendants in a car, Mr. Starks got 151 months. Those defendants got time served of about 20 months. So I don't think that the government is likely to increase Mr. Starks' sentence here. I think that's highly unlikely. Okay. I take it your client is well aware of the risks, but — Absolutely, yes. He is well aware of the risks involved. Okay. So going back to the waiver straight on, why isn't there a waiver? This is what — this is the sentence he bargained for, and he got something in return. Correct. At the time that Mr. Starks entered the plea agreement, obviously, Booker had not been decided. When we appeared for sentencing, Booker was decided the very morning that Mr. Starks was supposed to be sentenced, and clearly, it threw things into a state of turmoil. We put the matter over for further briefing after Booker, and then we had a lengthy sentencing hearing, which the sentencing transcript is part of this Court's record. This Court in Buchanan held that even where there's a written waiver in a plea agreement, the judge's oral pronouncement controls. So in Buchanan, this Court held that when the judge informed the defendant that he had a right to appeal, that was controlling because the defendant relied on it and believed what the judge told him in court. Well, but in this instance, surely, in going over the plea agreement, you explained in probably great graphic detail that your client was not going to be able to appeal if he approved the plea agreement. And I agree with — yes, that's true, and I'm sure that that was absolutely the case in Buchanan, too, that one goes over the appellate waiver. But what happened in the interim was that the Booker case was decided. And once Booker was decided that morning, it so changed. The guidelines went from being mandatory to being advisory. It set complete upheaval, and both the district court judge and defense counsel, who was myself, thought at that point that Mr. Starks could appeal. And during that sentencing, which lasted about an hour, the judge repeatedly told the defendant, I urge you to appeal, I think that you should appeal. In fact, he leaned toward ruling in Mr. Starks' favor and then said, well, you know, just take me up on appeal, let the Ninth Circuit decide. So over and over, the judge in that case said, you can appeal, and the government was silent. Well, but isn't the solution for the Booker problem to go to the government and say, whoops, this situation has really changed grossly, we've got to relook at this plea agreement? And that didn't — In the Buchanan decision, this Court found that when the government remained silent, when the district court told the defendant he had a right to appeal, that essentially the government now waived that issue. The government could no longer argue appellate waiver because when the district judge informed the defendant of his right to appeal, the government raised no appellate waiver. They remained silent. In the Starks case, the district court judge talked about the right to appeal over and over and over, and the government remained silent throughout the entire record. The government never once raised the appellate waiver issue. The judge — the district court judge said, I don't know what to do here. I feel bound by the guidelines, but I think they're wrong in this case. If I had any discretion after Booker, I wouldn't give this sentence. So if the judge thought the defendant did not have the right to appeal, he indicated on the record he would rule in favor of the defense and let the government appeal. So over and over, he said, I authorize this record for appeal. Can you appeal after Booker? And never did the government say there's an appellate waiver in the plea agreement. I have difficulty, I guess, understanding, though, how he relied on that when the plea agreement was signed earlier and there was no motion to withdraw it on the basis that the world had changed and it would no longer be just and equitable, et cetera, whatever the — I've got the wrong formulation, but the point being, he made no effort to get out of it. And I guess I have difficulty seeing how in that circumstance it can be said that he relied on the trial judge's auxed. At the point at which he was being sentenced, as a matter of strategy, he understood from his lawyer and the judge telling him that he could appeal. The judge directly told him, you can appeal. Either side can appeal. But he had already — he had already signed this, and the judge hadn't said one word. He'd already signed it before he ever went to the judge. That's true. But — I mean, just to follow up, in Buchanan, he did try to withdraw the waiver. And it seems to me that's a big difference. It's true. And there the court said, well, you can appeal, and so he relied on that. But in — but I don't — I don't think that this situation is the same, and I think we had distinguished Buchanan on that. It is true that in Buchanan the defendant did make a motion to withdraw his plea. Of course, in this case, you have the intervening landslide, the decision of Booker. And if you're talking about what the defendant understood here, Anthony Starks is a young man of very limited education. He obviously relies on what his attorney and what the judge tell him. And his understanding when he pled was that he was waiving his right to appeal, that he was allowed to ask for a downward departure in the guidelines, that if he didn't get a downward departure that he could appeal. On the morning that he was to be sentenced, the Booker decision came down. The judge on the bench said, I'm just printing out the Booker decision now, and I'm reading it, and I'll give you all more time to brief it. Subsequent briefs were filed, at which time his attorney — No motion to withdraw. No motion to withdraw, no. Now, this wasn't Mr. Starks' decision, clearly. Mr. Starks has a very limited understanding of the law. Mr. Starks relies on what his attorney tells him. Well, there's a good — I mean, going back to my initial question, there's a good reason, probably, that he doesn't move to withdraw, which is that the government agreed to dismiss a number of counts that would have subjected him potentially to a much, much greater sentence, regardless of Booker or not Booker. So he was still getting a significant benefit of his bargain. That's certainly true. He was getting the benefit of his bargain. There was a risk to withdrawing his plea. And it didn't seem strategically at that point in time, regardless of how it seems in hindsight, at that point in time, withdrawing his plea didn't seem to be the best option for him. The best option — Why isn't he simply stuck with the bargain that he struck? Well, for two reasons. One, the Booker decision came down after he struck that bargain. And, two, the district court, however erroneously, clearly believed that Mr. Starks had the right to appeal and said over and over and over, I want this scrutinized by the Ninth Circuit. I need help from the Ninth Circuit. But usually you want not to have the benefit of a district court's mistake. But here you say because the district court misunderstood the plea agreement, he should get the benefit of the mistake. I don't think the district court necessarily misunderstood the plea agreement. I think that after Booker came down, the district court judge thought that because Booker had so significantly changed things that the appellate waiver would be invalid, that Booker was now the law, that Ameline had been — we'd been getting remands to the — at the district court level, things were in a great deal of upheaval. And the district court judge obviously completely believed that Mr. Starks had the right to appeal. He says it over and over in the transcript. He — he says, in fact, either side can appeal. I authorize you to appeal. I urge you to appeal. Let me make a record for you. I — I think we understand your point on that. And I would just say that Mr. Starks plainly believed that he had the right to appeal when the district court judge told him repeatedly that he did, and he did rely on that right. You've more than used your time, your full time. Thank you. Thank you. Yes. Your Honor, Mark Osler, Florida v. Amici. Go ahead. I see that our time has been used up. We'll give you a couple of minutes if you want. Thank you. May it please the Court, the controlling case here is not Foe, it's not Eura. If you reach this issue, the controlling case is this Court's decision in Zavala. And there, which that opinion came out after this case was briefed, this Court, in a meth case, addressed a situation where the court below said that it presumed that the guideline range was the proper place to sentence. And in response to that, the panel in this Court said that that was not correct, that the guideline range is a starting point, and that nothing in 3553, as it stands after Booker, indicates that the guidelines are to be given greater weight than the other factors in 3553A. And here, they want not just a presumption, the government. They want a brick wall at the bottom of the guideline range. That's inconsistent with 3553A. And just briefly, Your Honor, I'd like to emphasize that 3553A is a statute that lists no fewer than 13 factors. There's fewer paragraphs in that, but there's multiple factors per paragraph. And those factors, one of them is considering the guidelines. Two of them concern the particular circumstances of the defendant in the crime. The other ten are a wide variety of considerations that the judge is supposed to take into account. And not one of them is controlling. The statute does not say, hit one way or the other. Zavala is right in reading that statute, and Foe and Ura were incorrect. I think that, if I can go on briefly, Your Honor? I just need you to come to a close, but you can just go on. Okay. Yes. In terms of disparity, which seems to be of great concern to the government, Justice Breyer knew that uniformity was likely to suffer under the remedy that was chosen. And you'll recall that in Booker that the reason we ended up with the somewhat odd split majority there was because the Court as a whole rejected Stevens, Justice Stevens's remedy, which would have allowed for uniformity. At least it would have turned the discretion over to juries where there had to be jury issues made or questions of fact that were going to be decided. And so in making that decision, the Supreme Court realized that uniformity might suffer, and they included that in the remedial case. Before you leave, what place, in your view, do the guidelines still have? The court below, in this case, did say at one point that the court wouldn't, shouldn't either blindly follow the guidelines or blindly ignore the guidelines, that if it was going to do something different, it had to do it on a case-by-case basis. What's wrong with that approach? And again, I go back to Zavala, that what the guidelines are is a starting point. And I think what Judge Shub at the very least did below here was assume it was a presumption, or, in fact, it was in the absence of particularized circumstances. He said there weren't any, didn't he? He said there weren't particularized circumstances. And if there were some that would take him out of the ordinary case, the contemplated fact, the guidelines, which are the guide I'm following, then I would make an adjustment. But there aren't. And he doesn't actually say that he has no authority to go outside the guidelines, period. He says, based on the facts of this case, he doesn't really see a basis to alter the guideline benchmark, because it's just a run-of-the-mill case in his view, factually. What's wrong with that? I think what's wrong with that is that he says there's no particularized circumstances that would cause me to go outside. He states very strongly that he would like to depart from the 100-to-1 ratio. Yes, because he doesn't like the guidelines. But that's not a basis for ignoring them. I mean, there's still guidelines, whether you think they're intelligent or silly. When a judge weighs these many factors, if in the end he doesn't choose the guidelines to predominate, it doesn't mean he's ignoring them. There's no doubt that a judge has a duty to take the guidelines into consideration. Has to give a particular factor. And he says, I can't see any here that would support that. Well, again, Your Honor, in 3553, there are things besides particularized circumstances. For example, even providing just punishment is part of 3553a2a. So in your view, does that mean that a sentencing judge, when looking at the guidelines, which are still advisory, a judge can say, I think that this guideline isn't just, and so I'm not going to follow it because I don't believe in the guideline? Is that a permissible ground for changing a sentence, in your view? Your Honor, I think it is, and I think that's what's in the statute itself. When we talk about the intent, the will of Congress, we have to start by looking at the statute. Because Congress speaks to the statute. If you say, just, I think this is stupid advice, and I'm not even going to think about it. Your Honor, very often that's what advisory means, I believe. Mandatory means that you have to follow it. Advisory means that you have to consider it. A judge considering and using discretion is within the statute, and it's within our process. I think we understand. Thank you. Good morning, Your Honors. Ann Pings on behalf of the United States. I'd like to go in reverse order, if I couldn't, talk about the Zavala, if I could, to start with. Zavala is what controls now in this circuit, and Zavala said explicitly that the guidelines should be used as a starting point. Then the Court went on to talk about the consideration of additional factors. And throughout the opinion, if you go through and parse it with a highlighter, as I have done, the Court refers over and over again to individual, this defendant, this defendant sentence, individual, this case, the facts of the case. And the Court says in that case, the Court is sentencing an individual, and its task is an attempt to find the most reasonable sentence for that person within the territory of all possible reasonable sentences. It then goes on to talk about the unique skills that we attribute to district courts to sort through, I believe it calls it, the nuances and possibilities of the human condition that the district court judges are so good at perceiving. It's very clear from Zavala in the government's view that the guidelines are a starting point, and then the additional considerations under 3553 should be individualized considerations. And that approach is entirely consistent with Zavala. I would just note in 3553 that there is no, of all the 13 factors, not one single one of them says and considered the district court's own political beliefs or own policy decisions regarding the validity of punishing certain kinds of crimes. That is a congressional role. And the district court indicated in this case on these sort of unique facts that that was absolutely the sole and entire reason that he was debating at all in imposing the sentence was because he disagreed with the guidelines for crack cocaine. His – I believe his sentence was that he believed that the ratio was imposed to correlate to the simple fact that powder cocaine is the drug of choice among yuppies, dot-commers, and movie stars in Beverly Hills. That was the sole issue that he was struggling with. It was nothing particularized about Mr. Starks. So the issue presents itself very cleanly here as it did in, I believe, in the Eurora case in the Fourth Circuit and also the case, I'm not sure how to pronounce it, it's spelled H-A-A-C-K, Haak or Haak, in the Eighth Circuit, which was a marijuana case. But in that case, the circuit said, no, you cannot impose your own belief about marijuana guidelines being too low, which is the opposite, for the judgment that is set forth by Congress and reflected in the guidelines. I would like to talk about the waiver and the benefit of the bargain in this case. The real benefit of the bargain that this defendant got is that the government agreed not to file what's called the notice of prior conviction under Section 851. Title 21 provides that if the defendant has a prior conviction, that his mandatory minimum sentence can be doubled. In this case, the defendant sold a quantity of crack cocaine that subject him to a 10-year mandatory. If the government had filed notice, the – there's a threshold requirement that we file the notice prior to the entry of plea so that he has notice of the conviction for it to kick in and actually affect his sentence. We agreed to waive that notice for not one, but two prior convictions, which theoretically would have subjected him to a life mandatory. In real practice, we typically only file one. We need permission of the Department of Justice to ask for life. But so in real circumstances, what this defendant got was avoiding a 20-year mandatory minimum sentence under the statute, which, personally, I find rather ironic that the defendant still, under these guidelines, is doing better than he would have done without the plea agreement. He's doing better under the guidelines than he would have done under a pure statutory regimen if the government had not entered into that agreement. So in addition to the additional counts, it's also this mandatory 20-year minimum that he could have faced. And that is why he did not come in after Booker and say, I want to withdraw my plea. Booker changes everything, I think have a shot. That is why he did not move to withdraw his plea, because he still wanted the benefit of that bargain, of being able to avoid the 20-year mandatory. The provisions of the plea agreement that I was questioning opposing counsel about earlier on the, if the defendant succeeds at his own request in reducing his sentence, that he opens himself up to a bunch of other stuff. Opposing counsel said that it was not realistic to believe that the government would actually seek to reinstate earlier counts or otherwise to pursue other options. Do you have a statement of what the government would do, or do you not know? I am but a small pawn in a large bureaucracy. I cannot answer that question at this point. But I believe, theoretically, that we are entitled to move to vacate the plea and subject the defendant to a 20-year mandatory minimum by simply filing that 851, that Section 851 notice. That's what the plea agreement provides. Whether we will exercise it, I can't. That's a decision I can't make on my own account. Help me understand why trial counsel would sit there and say absolutely nothing to the district judge about the terms of the plea agreement when he or she was hearing these repeated statements, you can appeal, you should appeal, and so forth. Why would counsel not say something, say, Judge, there's a plea agreement. There's a no-appeal term. Well, Your Honor, it's the government's position that the Court knew that, and he, at the end of the sentencing proceeding, he declares as one of the very last things, I am hereby authorizing the defendant to file an appeal. He knew that there was a plea agreement in place. A lot of the discussion, most of the discussion, in fact, goes through as if he's going to rule in the defendant's favor, most of the discussion. And then at the end, he says he's going to switch it around because he thinks maybe we won't appeal, and that way he won't get the, essentially, the advisory opinion that he's seeking, that he's asking for from this Court. So it's our position that he knew all along about this, but decided to turn it on its head and give the defendant something that he wasn't entitled to, which was the right to appeal. And we would submit that the case law could not be more clear after, since Buchanan, there's been the Floyd case and the Lopez-Armenta case, which very clearly limit the Buchanan idea to the situation in which there is some sort of detrimental reliance on the district court's words. In Buchanan, yes, the defendant had filed a motion to withdraw his plea, and essentially, everyone got together and said, come on, take that motion back, let's go forward with sentencing, and you can appeal. And based on that, he decided not to pursue his motion to withdraw. In this case, there was absolutely nothing pending, nothing that he could no action the defendant could have taken where there could have been any reliance on that decision. It was her question? Okay. I had a question. I thought that in the record here, that there was originally talk about the government appealing, doing the sentence the other way, and having the government appeal. And then they just didn't, then that didn't happen. And the Court said, I urge the defendant to appeal from this sentence if his attorney believes that an appeal would be fruitful and useful, and the Ninth Circuit may decide. I'm not sure that's a categorical statement. You have a right to appeal any sentence that I make, which is, you know, kind of the standard rule of 11, I guess. Is that the way that it happened? Well, it was a very bizarre circumstance, frankly, because the judge was clearly seeking some guidance, and he didn't want to make a ruling in the defendant's favor without having the comfort of essentially an opinion from this Court. So the whole discussion all along is basically, I'm going to do what I want. I'm going to impose my own, my own ratio. I'm going to go against the guidelines. And then kind of at the end, he decided that what he wanted most of all, essentially it sounded like, was an opinion from this Court. He wanted someone to appeal, and he thought maybe we might not. Well, you know, he does the most useful thing for your opponent is what happens at the very end at page 30 of the transcript, where he says you have a right to appeal your sentence, particularly if you think the sentence is contrary to law, and tells him it has to be within 10 days, and about payment of costs, and getting appointment of counsel. If you request it, the clerk of the Court will prepare and file a notice of appeal on your behalf. It is the Court's intention to authorize Mr. Starks to appeal from his sentence in this case. Does that override the terms of the agreement? And we've spent not under the law of the circuit, particularly the Floyd case. In that case, the government stood silent as well. And the that was decided right after Buchanan. And it's very clear when you read the Lopez-Armenta case that that line of cases has been distilled down to this notion that district courts cannot undo plea agreements by just saying, you know, I mean, he could have said, oh, government, you can file your notice of and give him a 20-year mandatory. That wouldn't be fair. And it's not fair on the flip side to all of a sudden allow him to appeal either. So it's really the detrimental reliance that's totally lacking in this case. Okay. Thank you. Thank you. The case just argued is submitted for decision. The next case, United States v. Flowers, is submitted on the briefs, and it is so ordered. The next case for argument, Abraham v. McDaniel.
judges: Schroeder, Graber, Holland